## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

| | |
|---|---|
| IN RE:  HARDIEPLANK FIBER CEMENT SIDING LITIGATION | Case No. 12-md-2359<br>MDL No. 2359 |
| THIS DOCUMENT RELATES TO ALL ACTIONS | **FIRST AMENDED CONSOLIDATED COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

Through the undersigned counsel, plaintiffs Heidi Picht, Jonathan Bowers, Hugh Fenwick, Michael Swiencki, the Susan S. Buchanan Personal Residence Trust through its trustee Susan Buchanan, James Dillingham, Mark Kostos, Richard Treece, Masoud Kavianpour, Brian Bethel, and John Brown, individually and on behalf of all others similarly situated, file this class action complaint against defendant James Hardie Building Products, Inc.  On personal knowledge of their own circumstances, and on investigation and the information and belief of their counsel, Plaintiffs aver the following:

### INTRODUCTION

1.     Defendant manufactures, advertises, sells, and distributes fiber cement exterior siding (the Siding) throughout the United States for installation on homes, commercial buildings and other structures.

2.     Defendant markets and warrants that its Siding is durable, and until recently, further marketed and warranted that its Siding offers long-lasting protection for

a specified life of 50 years without the need for maintenance.[1]  Through a transferable 50-year warranty and its marketing materials, Defendant provided a reasonable expectation in consumers and the industry that the Siding would have a usable lifetime of at least 50 years.

3.      Through sales brochures and marketing literature, which were widely distributed to building professionals and were generally available to Plaintiffs and the general public, Defendant made the following representations about the Siding:

a.      "At James Hardie, we know weather and how to stand up to it.  We should.  We've been doing it for nearly a hundred years."

b.      "James Hardie siding in unmatched for its weather resistance, toughness and natural beauty."

c.      "It's hard to say what's more beautiful.  The way our siding looks.  Or the way it stands up to the elements.  James Hardie siding is tough.  Remarkably so.  And to prove it, most of our products come with a 50-year transferable warranty.  Rain.  Hail.  Fire.  Fluctuations in humidity.  Even hurricanes.  None of it stands a chance against James Hardie."

d.      "[Y]ou'll appreciate the fact that every James Hardie siding product we make is designed and engineered to defend your home against the worst things you can imagine."

4.      Defendant has made specific and material representations regarding the qualities of its Siding, such as that it "resists flame, rotting, [and] cracking" and that it "resists shrinking and swelling."

5.      Notwithstanding its warranty and representations, Defendant did not make it known that (1) the anticipated life of the Siding is far less than 50 years; (2) some

---

[1]      Defendant recently shortened the length of its Siding warranty to 30 years.

Siding components are warranted for a period of time substantially less than 50 years; and (3) some Siding components are not warranted at all.

6.     The Siding is susceptible to premature failure, causing damage to the underlying structures and property of Plaintiff by allowing water and moisture to penetrate into the structure.

7.     As the Siding deteriorates, it warps, cracks, flakes, shrinks, and discolors. Because of warping and cracking, the Siding can pull loose from its fasteners, and at the extreme, it breaks or falls off the structure.

8.     Plaintiffs bring this action individually and on behalf of all those similarly situated to seek redress for damages caused by Defendant's wrongful conduct.

## **PARTIES**

9.     Plaintiff Heidi Picht is a natural person and citizen residing in Donnelly, Minnesota.

10.    Plaintiff Jonathan Bowers is a natural person and citizen residing in Zimmerman, Minnesota.

11.    Plaintiff Hugh Fenwick is a natural person and citizen residing in Carson City, Nevada.

12.    Plaintiff Michael Swiencki is a natural person and citizen residing in Douglasville, Georgia.

13.    Plaintiff Susan S. Buchanan Personal Residence Trust is a Florida trust.  Its trustee, Susan Buchanan, is a natural person and citizen residing in Winter Haven, Florida.

14.     Plaintiff James Dillingham is a natural person and citizen residing in Placerville, California.

15.     Plaintiff Mark Kostos is a natural person and citizen residing in Yorkville, Illinois.

16.     Plaintiff Richard Treece is a natural person and citizen residing in West Frankfort, Illinois.

17.     Plaintiff Masoud Kavianpour is a natural person and citizen residing in Leesburg, Virginia.

18.     Plaintiff Brian Bethel is a natural person and citizen residing in Clear Creek, Ohio.

19.     Plaintiff John Brown is a natural person and citizen residing in Winthrop Harbor, Illinois.

20.     Defendant James Hardie Building Products, Inc. is a Nevada corporation with its principal place of business in Chicago, Illinois.  Before August 2010, Defendant had its principal place of business in Mission Viejo, California.  Defendant is a leading manufacturer of building materials in the United States, and sells its Siding throughout the United States.

## **JURISDICTION AND VENUE**

21.     Defendant conducts substantial business in the District of Minnesota and throughout the United States, including but not limited to the marketing and sale of its Siding.  This Court has jurisdiction over Defendant because it has intentionally availed

itself of the markets and laws of the State of Minnesota and of the markets and laws of other jurisdictions throughout the United States.

22.     Jurisdiction is proper in this Court pursuant to 28 U.S.C. § 1332(d) because the vast majority of class members are citizens of a state different than the Defendant and the aggregate amount in controversy exceeds five million dollars ($5,000,000.00), exclusive of interest and costs.

23.     Venue is proper pursuant to 28 U.S.C. § 1407 because the claims in this action have been consolidated for multidistrict litigation in this District by the Judicial Panel on Multidistrict Litigation.

## FACTUAL ALLEGATIONS

**A.     Defendant's Representations about the Siding**

24.     Defendant manufactured, distributed, marketed, and sold the Siding throughout the United States for installation on homes, commercial buildings, and other structures.  The Siding was installed on the Plaintiffs' residences.

25.     Defendant has stated that the Siding is durable, that it does not need maintenance, and until recently, that it will last 50 years.[2]  Through its transferable 50-year warranty and statements in marketing and advertising materials, Defendant created a reasonable expectation, among ordinary consumers and in construction trades, that the Siding would have a usable life of at least 50 years.

---

[2]     Defendant recently shortened the length of its Siding warranty to 30 years.

26.     Through sales brochures and marketing literature, which were widely distributed to building professionals and were generally available to Plaintiffs and the general public, Defendant represented that the Siding is durable, reliable, long-lasting, and suitable for its intended use.

27.     Through sales brochures and marketing literature, which were widely distributed to building professionals and were generally available to Plaintiffs and the general public, Defendant further represented that certain Siding is specifically engineered for cold climates.  Such representations include the following:

   a.     "Fights cold, snow, ice and worry."

   b.     "The HZ5 product line lets you sleep easy in climates with freezing temperatures, extreme seasonal temperature variations, and snow and ice."

   c.     "[Y]ou aren't getting an exterior that performs well in cold, nasty climates.  You're getting an exterior engineered just for it."

   d.     "Resists damage from freezing temperatures."

   e.     "Resists damage from snow and ice."

28.     Through sales brochures and marketing literature, which were widely distributed to building professionals and were generally available to Plaintiffs and the general public, Defendant further represented that certain Siding is specifically engineered for hot, humid climates.  Such representations include the following:

   a.     "This siding was engineered for . . . the brutal, humid heat of the Deep South.  Engineered specifically for these climates, HZ10 boards resist cracking, splitting, rotting and swelling, season after hot, humid tropical storm season."

      b.     "James Hardie provides siding with specific performance attributes relative to where the product is being used."

      c.     "James Hardie now gives you the optimum siding for your home and climate, regardless of location."

29.    The Siding does not live up to Defendant's representations. Due to the deterioration of the Siding, it requires unexpected maintenance and premature repair and replacement. As a result, the Siding does not have the value or quality indicated by Defendant's representations.

30.    Defendant has made specific and material representations regarding the qualities of its Siding, such as that it "resists flame, rotting, [and] cracking" and that it "resists shrinking and swelling." Such representations are not sales puffery, but instead convey information regarding the durability and performance of the Siding.

31.    Notwithstanding its warranty and representations, Defendant did not make it known that (1) the anticipated life of the Siding is far less than 50 years; (2) some Siding components are warranted for a period of time substantially less than 50 years; and (3) some Siding components are not warranted at all.

32.    Through sales brochures and marketing literature, which were widely distributed to building professionals and were generally available to Plaintiffs and the general public, Defendant represented that its Siding would last 50 years without problems, or else Defendant would remedy the situation. Defendant further represented that the Siding would require low maintenance or no maintenance.

33.    Notwithstanding its representations regarding the duration of its warranty, Defendant invokes statutes of limitation or statutes of repose that effectively reduce the

period of warranty coverage to as little as one year.  Defendant accordingly failed to inform Plaintiffs and the general public that, under statutes of limitation or statutes of repose, they may receive a far shorter period of warranty protection than expressly stated in the warranty.

**B.      Defects in the Siding**

34.     The Siding is defectively designed and manufactured such that it prematurely fails.  This allows water and moisture to penetrate into the structure, thereby causing damage to the underlying structure and other adjoining property.

35.     Defendant failed to use appropriate primer for the Siding at the time of manufacture, accelerating cracking, flaking, delamination, and discoloration of the Siding.

36.     The Siding's defects are so severe that Plaintiffs and class members must repair or replace it much sooner than would reasonably be expected by users of ordinary exterior siding, by consumers who purchased the Siding specifically, or by persons who own structures with the Siding.

37.     James Hardie knew or reasonably should have known that the Siding is defective; that the Siding fails prematurely; and that the Siding is susceptible to drying, cracking, delamination, moisture penetration, and other problems.

38.     Defendant has instructed installers to keep the product away from moisture and to divert water away from installed Siding.  These instructions, which recommend techniques such as hand-sealing cuts, fail to prevent water penetration or shrinkage and delamination.

39.     As the Siding deteriorates, it warps, cracks, flakes, shrinks, and discolors. Because of warping and cracking, the Siding can pull loose from its fasteners, and at the extreme, it breaks or falls off the structure.

40.     Defendant markets and sells specific types of the Siding purportedly engineered for various climates throughout the United States.  In its marketing literature, Defendant publishes a map indicating which types of Siding are proper for various regions of the United States.

41.     Defendant knew that the Siding would be used in extreme weather conditions.  Defendant published installation guides that were specifically targeted to particular regions of the United States.

42.     In colder climates, the Siding goes through repeated freeze-thaw cycles. Because of moisture penetration, the Siding suffers increased expansion and contraction. As this moisture subsides, the Siding shrinks and pulls away from fasteners; gaps develop between the boards; and the finish flakes, discolors, and delaminates.

43.      In warmer climates, as the Siding goes through repeated fluctuations in humidity, it experiences increased expansion and contraction as a result of excess moisture in the product.  As the moisture subsides, the Siding begins to shrink, causing gaps, causing the Siding to pull from fasteners, and causing flaking, discoloration, and delamination.

44.     Due to defects in the Siding, it is not sufficiently durable to be suitable for use as a building product, and it is not does not perform in accordance with the

reasonable expectations of users and consumers.  The following photographs show some of the problems that Plaintiffs have encountered with their Siding:



**C.     Defendant's Improper Warranty Practices**

45.     When a customer files a warranty claim, Defendant does not honor its 50-year transferable warranty, and instead unilaterally imposes a *limited* warranty that is anything but a full 50-year warranty.  The putative limited warranty does not apply to some portions of the Siding and is severely limited in the remedy provided to consumers.

46.     In addition, Defendant intentionally concealed the terms of its putative limited warranty by widely marketing a "50-year transferable warranty" rather than a "limited warranty."  Users and consumers had no reason to know that, instead of honoring warranties it created through representations in its sales and marketing, Defendant would contradict those bargained-for warranties and impose a "limited warranty" with severely onerous terms.

47.     Defendant has improperly handled hundreds of warranty claims for the Siding, rejecting or settling the claims in a manner that violates the terms of its actual warranties and its purported "limited warranty."

48.     Defendant's improper warranty practices are reflected by consumers' statements on internet message boards, including the following:

> a.     "Hardieplank has a serious problem with paint peeling off in areas where snow piles up against it.  Don't know what the reason is, or what the mechanism for the problem is, just that a local Hardie rep admitted that pain peeling problems are an issue in Alpine climates. It is a real problem with dozens of houses in central Idaho in snow country.  I've seen it."

> b.     "HardiPlank should not be selling their product in northern climates if it can't withstand snow and rain conditions.  The sad part of this is that we did not choose Hardiplank without researching and comparing it to other products.  It was very much a well-though out and planned decision.  I guess you really find out what 'warranty' means when you have problems."

> c.     "To say the company has been unresponsive is quite an understatement.  After almost two months and no response to submitting our claim, a telephone call to them revealed they could not find our claim.  All information was then emailed.  Another follow-up call to them revealed they were not going to do anything and cited 'improper installation' which is definitely not the case."

49.     When Defendant processes warranty claims, it provides inadequate relief, improperly limiting recovery to piecemeal replacement of individual boards of the Siding, as well as excluding the cost of labor to replace the Siding.

**D.     Defendant's Concealment of the Siding's Defects**

50.     Despite receiving a litany of complaints from consumers like Plaintiffs, Defendant refuses to inform users and consumers about the defects in the Siding, and it has failed to fully repair damage caused by premature deterioration of the Siding.

51.     Because of the ongoing deterioration of the Siding, and Defendant's refusal to disclose defects in the Siding, owners of the Siding have suffered actual damages.  The Siding on their structures has and continues to fail much sooner than reasonably expected by ordinary users or consumers of other brands of siding, by consumers who purchased the Siding specifically, or by persons who own structures with the Siding.  As a result, owners of the Siding must spend thousands of dollars to repair it and prevent continuing damage.

52.     When denying warranty claims, Defendant has used form letters that obfuscate and misrepresent the defective nature of the Siding.

53.     At all relevant times, James Hardie had a duty at sale and a continuing duty to disclose that the Siding was defective, prone to foreseeable and uniform problems, and otherwise was inherently flawed in its design such that the Siding was not suitable for use as an exterior building material.

54.     The defects in the Siding are latent and not detectable until after they manifest.

55.     Plaintiffs and other owners of the Siding could not reasonably discover, even with the exercise of due diligence, that it was defective until after it was installed.

56.     Plaintiffs seek to recover the costs to repair and replace the Siding and related damage to their structures and any adjoining property, or in the alternative, injunctive relief requiring Defendant to replace the defective Siding with a non-defective product.

**E.     The Use and Deterioration of the Siding on Plaintiffs' Residences**

        **Plaintiff Heidi Picht**

57.     Plaintiff Heidi Picht purchased a new home in Donnelly, Minnesota in 2006.  The Siding was installed on her home during the original construction.

58.     In spring 2007, Ms. Picht found that the stain or surface of the Siding was flaking, resulting in white spots.  This flaking exposed the underlying material of the Siding.

59.     Over time, the Siding on Ms. Picht's home deteriorated.  The Siding began to shrink, causing gaps between the boards, and causing some boards to pull from their fasteners.  The Siding also warped, delaminated, and became severely discolored in places.

60.     Because of the failure of the Siding, water penetrated into Ms. Picht's home, damaging the underlying structure.

61.     Ms. Picht contacted Defendant through its authorized representatives, which led to inspections of her home on multiple occasions.  Through the conduct and

representations of Defendant's representatives, Ms. Picht was prevented from asserting her rights under warranties for the Siding.

### Plaintiff Jonathan Bowers

62.     In 2003, the Siding was installed on Plaintiff Jonathan Bowers' home in Zimmerman, Minnesota.

63.     Mr. Bowers subsequently observed that the Siding was gapping, shrinking, discoloring, delaminating, and deteriorating.

64.     Mr. Bowers reported these concerns to Defendant, which responded that the Siding does not shrink and denied any problems with the Siding.   Through these representations, Mr. Bowers was prevented from asserting his rights under warranties for the Siding.

### Plaintiff Hugh Fenwick

65.     The Siding was installed on Plaintiff Hugh Fenwick's home in Carson City, Nevada in 2006.

66.     Mr. Fenwick subsequently observed that the Siding was gapping, shrinking, crumbling, and delaminating.  Some pieces of the Siding fell off of the structure.

67.     When Mr. Fenwick reported these problems to Defendant, it refused to take any action to remedy the problem, or to honor the terms of any warranties for the Siding.

### Plaintiff Michael Swiencki

68.     Plaintiff Michael Swiencki's home was built in Douglasville, Georgia in approximately 2008.  The Siding was installed during the original construction.

69.     In approximately April 2011, Mr. Swiencki observed that the Siding was gapping and shrinking, causing some boards to pull from the fasteners.  He also observed warping and delamination.

70.     Due to gaps and deterioration in the Siding, the underlayment of Mr. Swiencki's home was exposed to the elements, risking damage to the underlying structure.

71.     Based on the failure of the Siding, Mr. Swiencki submitted a warranty claim to Defendant on November 3, 2011.

### Plaintiff Susan S. Buchanan Personal Residence Trust

72.     Plaintiff Susan S. Buchanan Personal Residence Trust owns a home in Winter Haven, Florida, occupied by its trustee, Susan Buchanan.  The Siding was installed on the home when it was built in approximately 2006.

73.     In approximately August 2011, Ms. Buchanan noticed that the Siding was gapping and shrinking, causing some boards to pull from the fasteners.  She also observed warping and delamination.

74.     Due to gaps and deterioration of the Siding, the underlayment of Ms. Buchanan's home was exposed to the elements, risking damage to the underlying structure.

75.     Based on the failure of the Siding, Ms. Buchanan submitted a warranty claim to Defendant on February 9, 2012.

**Plaintiff James Dillingham**

76.     Plaintiff James Dillingham owns a home in South Lake Tahoe, California. The Siding was installed on it in approximately 2005.  Mr. Dillingham purchased the home from the original owners in October 2011.

77.     After he purchased the home, Mr. Dillingham observed that the Siding was discoloring, delaminating, and deteriorating.

78.     Shortly thereafter, Mr. Dillingham submitted a warranty claim to Defendant.

**Plaintiff Mark Kostos**

79.     The Siding was installed on Plaintiff Mark Kostos' home in Yorkville, Illinois in 2006.

80.     Around November 2011, Mr. Kostos observed that the Siding was gapping, shrinking, and peeling around its edges, and that the underlying material was deteriorating from exposure to moisture.

81.     Due to gaps and deterioration of the Siding, the underlayment of Mr. Kostos' home was exposed to the elements, risking damage to the underlying structure.

**Plaintiff Richard Treece**

82.     In approximately November or December 2004, the Siding was installed on Plaintiff Richard Treece's home in West Frankfort, Illinois.

83.     Mr. Treece subsequently observed that the Siding was gapping, shrinking, and discoloring.  Some pieces of the Siding fell off of the structure.

84. Due to gaps and deterioration of the Siding, the underlayment of Mr. Treece's home was exposed to the elements, risking damage to the underlying structure.

**Plaintiff Masoud Kavianpour**

85. The Siding was installed on Plaintiff Masoud Kavianpour's home in Leesburg, Virginia in March 2005.

86. In 2010, Mr. Kavianpour determined that the Siding was deteriorating in numerous places.

87. Mr. Kavianpour submitted a warranty claim to Defendant on April 15, 2010.

**Plaintiff Brian Bethel**

88. Plaintiff Brian Bethel's home is located in Clear Creek, Ohio. The Siding was installed at the time the home was built. The installer was licensed or authorized by Defendant.

89. Plaintiff purchased his home in January 2011.

90. In approximately June 2012, Mr. Bethel observed that the Siding was gapping and shrinking, causing some boards to pull from the fasteners. He also observed warping and delamination.

91. Due to gaps and deterioration of the Siding, the underlayment of Mr. Bethel's home was exposed to the elements, risking damage to the underlying structure.

92. Mr. Bethel submitted a warranty claim to Defendant in approximately July 2012.

**Plaintiff John Brown**

93.     The Siding was installed on Plaintiff John Brown's home in late 2004 or early 2005.

94.     In late 2011, Mr. Brown observed that the Siding was gapping, cracking, shrinking, and delaminating.  He also observed fading and peeling.

95.     Due to gaps and deterioration of the Siding, the underlayment of Mr. Brown's home was exposed to the elements, risking damage to the underlying structure.

96.     Mr. Brown submitted a warranty claim to Defendant in late 2011.

## CLASS ACTION ALLEGATIONS

97.     This action is brought and properly maintained as a nationwide class action pursuant to Fed. R. Civ. P. 23, on behalf of a class defined as follows:

> All individuals and entities that own, or have owned, homes or other structures physically located in the United States, on which James Hardie's Fiber Cement Siding is or has been installed.

98.     In the alternative, Plaintiff proposes the following subclasses:

> All individuals and entities that own, or have owned, homes or other structures physically located in the State of California, on which James Hardie's Fiber Cement Siding has been installed.

> All individuals and entities that own, or have owned, homes or other structures physically located in the State of Florida, on which James Hardie's Fiber Cement Siding has been installed.

> All individuals and entities that own, or have owned, homes or other structures physically located in the State of Illinois,

on which James Hardie's Fiber Cement Siding has been installed.

All individuals and entities that own, or have owned, homes or other structures physically located in the State of Minnesota, on which James Hardie's Fiber Cement Siding has been installed.

All individuals and entities that own, or have owned, homes or other structures physically located in the State of Ohio, on which James Hardie's Fiber Cement Siding has been installed.

All individuals and entities that own, or have owned, homes or other structures physically located in the State of Virginia, on which James Hardie's Fiber Cement Siding has been installed.

99.     As defined above, this complaint collectively refers to these proposed classes as the Class.

100.     The Class shall not include Defendant, any entity in which Defendant has a controlling interest, any entity with a controlling interest in Defendant, and Defendant's agents, assigns, successors, and legal representatives.

101.     The Class also shall not include any person or entity that previously commenced and concluded a lawsuit against Defendant arising out of the subject matter of this lawsuit.

102.     The Class also shall not include the Judge assigned to this case and any member of the Judge's immediate family.

103.     The Class is so numerous that individual joinder is impracticable.  The actual number of Class members is not precisely known but will likely number in the

hundreds or thousands.   Defendant possesses information that makes it feasible to determine the actual number of Class members.

104.   In this lawsuit, numerous questions of law and fact are common to both Plaintiffs and the Class, and these questions predominate over any issues that may affect individual Class members.  These questions include but are not limited to the following:

a.      Whether the Siding is defective.

b.      Whether the Siding is subject to shrinking, warping, gapping, cracking, chipping, pulling away from fasteners, delaminating, and separating from structures such that it is not suitable for use as an exterior siding product.

c.      Whether the Siding prematurely discolors, effloresces, or exudes high-acidity substances such that it is not suitable for use as an exterior siding product.

d.      Whether Defendant knew or should have known the defective nature of its Siding before making it available for purchase and use by Plaintiff and the Class.

e.      Whether Defendant owed a duty to Plaintiffs and the Class to exercise reasonable and ordinary care in the testing, design, production, manufacture, warranting, and marketing of the Siding.

f.      Whether Defendant breached its duties to Plaintiffs and the Class by designing, manufacturing, producing, marketing, advertising and selling defective Siding to Plaintiffs and the Class.

g.      Whether Defendant breached its duty to Plaintiffs and the Class by failing to promptly withdraw the defective Siding from the marketplace or take other appropriate remedial action.

h.      Whether the Siding failed to perform in accordance with the reasonable expectations of ordinary consumers such as Plaintiffs and the Class.

i.      Whether Defendant's Siding fails to perform as advertised or warranted.

j.      Whether Defendant breached its express warranties to Plaintiffs and the Class by selling defective Siding to Plaintiffs and the Class and then refusing to cover the full costs associated with replacing the Siding.

k.      Whether Defendant breached its implied warranties to Plaintiffs and the Class by advertising, marketing, and selling Siding not of merchantable quality, or unfit for its intended purpose, and then refusing to cover the full costs associated with replacing the defective Siding.

l.      Whether Plaintiffs and the Class are entitled to compensatory damages, including but not limited to the cost to remove and replace the Siding, as well as damages from the diminution of value of Class members' properties.

105.   Plaintiffs' claims are typical of those of the Class in that Plaintiffs, like all Class members, have the Siding installed on their respective structures and are subject to losses from the failure of the Siding.   Plaintiffs have experienced problems with the Siding consistent with those experienced by Class members.   Plaintiffs suffered damages in the form of costs to replace and repair the Siding, as well as the diminution of value of the underlying real property, and such damages are consistent with those suffered by Class members.

106.   Plaintiffs will fairly and adequately protect the interests of the Class. Plaintiffs retained experienced counsel with the necessary expertise and resources to prosecute a nationwide consumer class action.   Plaintiffs and their counsel do not anticipate circumstances where Plaintiffs' interests would be adverse to those of the Class.

107.   A class action is superior to other available methods for the fair and efficient adjudication of this controversy.

a.   It would be economically impractical for Class members to pursue individual actions against Defendant, because the costs of prosecution would likely surpass their individual damages.

b.   Without class action, Plaintiffs and Class members have no effective remedy to recover their damages.   Class action allows Class members to assert their rights against Defendant while conserving the resources of the Court and the Parties.

      c.    Class action prevents inconsistent judgments from a multitude of individual actions in different courts.

108.   Defendant has acted or refused to act on grounds that apply generally to the Class, such that final injunctive or declaratory relief is appropriate. These grounds include but are not limited to the following:

      a.    Whether the Siding is defective.

      b.    Whether Defendant knew or had reason to know that the Siding was defective.

      c.    Whether limitations in Defendant's purported "limited warranty" are unconscionable or unenforceable.

      d.    Whether Defendant has made deceptive or false representations regarding the characteristics or benefits of the Siding.

      e.    Whether Defendant has made deceptive or false representations regarding the grade or quality of the Siding, or whether it meets a particular standard.

      f.    Whether Defendant has handled previous warranty claims in a manner consistent with the terms of its warranties, and if not, what procedures are necessary to audit or reexamine previous warranty claims.

      g.    Whether procedures are needed to preserve the rights of Class members who face prospective failure of the Siding.

## **ESTOPPEL FROM PLEADING THE STATUTE OF LIMITATIONS**

109.    Defendant knew or reasonably should have known that the Siding was defective before its sale.  Defendant intentionally concealed material information and the truth concerning the Siding from Plaintiffs and the general public, while continuing to assert that the Siding was a durable, long-lasting product.

110.    Defendant affirmatively represented to the general public that the Siding carried a 50-year transferable warranty.  Through these representations, Defendant created a reasonable expectation, among ordinary consumers and in construction trades, that the Siding would have a usable life of at least 50 years.

111.    Defendant's acts of fraudulent concealment also include, but are not limited to, failing to disclose the Siding was defectively manufactured and would deteriorate long before its expected life-time.

112.    Because the defects in the Siding are latent and not detectable until manifestation, Plaintiffs were not reasonably able to discover defects and problems with the Siding, notwithstanding his exercise of due diligence.

113.    Plaintiffs had no reasonable way to discover this defect until shortly before he filed this Complaint.

114.    Defendant had a duty to disclose the Siding was defectively designed or manufactured.

115.    Based on Defendant's misrepresentations and concealment, Defendant is equitably estopped from asserting a statute-of-limitations defense.

116.   Alternatively, to the extent Defendant made statements through its agents that deflected or misrepresented Defendant's involvement or responsibility for defects or problems with the Siding, Defendant is equitably estopped from asserting a statute-of-limitations defense.

117.   Alternatively, to the extent Defendant made statements that induced Plaintiffs or the Class to await whether Defendant would provide a remedy for the failure of the Siding, Defendant is equitably estopped from asserting a statute-of-limitations defense.

<u>**FIRST CAUSE OF ACTION**</u>
**Breach of Express Warranty**
Brought By Plaintiffs Bethel, Bowers, Brown,
Buchanan Trust, Dillingham, Fenwick, Kavianpour, Picht, and Swiencki
on behalf of a nationwide class or state subclass(es)

118.   Plaintiffs incorporate by reference each of the allegations contained in the preceding paragraphs.

119.   Defendant marketed and sold the Siding into the stream of commerce with the intent that the Siding would be purchased by contractors, subcontractors, and end users for installation on structures owned and bought by Plaintiffs and the Class.

120.   Defendant expressly warranted in writing that its Siding is well-suited as outdoor siding material with a useful life of 50 years.  For purchasers of the Siding or of structures with the Siding, these warranties became part of the basis of the bargain and Plaintiffs relied upon the warranties.

121.    Defendant created express warranties for the Siding through its sales brochures and marketing materials.  These warranties have full force and effect, notwithstanding any limitations in the "limited warranties" from Defendant.

122.    Defendant made the express warranties to the ultimate consumers, such as Plaintiffs and the Class.

123.    Defendant breached its express warranties because the Siding does not perform as promised.  The Siding gaps, warps, shrinks, cracks, chips, pulls away from fasteners, delaminates, and detaches from structures.  As a result, the Siding is not suitable for use as an exterior siding product.  Due to gaps and deterioration in the Siding, the underlayment of Plaintiffs' home was exposed to the elements, risking further damage to the underlying structure.

124.    After determining that they had suffered damages from the failure of the Siding, Plaintiffs gave Defendant notice of the breaches of warranty, and Defendant had actual notice of these breaches.

125.    Defendant's purported "limited warranty" fails of its essential purpose because it purportedly warrants that the Siding will perform as promised for at least 50 years, when in fact, the Siding does not last for this period.

126.    Defendant's purported "limited warranty" also fails of its essential purpose in that it limits recovery to piecemeal replacement of individual boards of the Siding, as well as excluding the cost of labor.  Such limitations are inadequate to redress failure of the Siding or any resulting damage to the underlying structure.  As a result, the "limited warranty" does not provide a minimum adequate remedy.

127.   The limitations and exclusions in Defendant's warranties are unconscionable and unenforceable.

128.   Defendant denied or failed to pay all costs and damages associated with replacing Plaintiffs' Siding.

129.   Plaintiffs and the Class have relied on Defendant's express warranties to their detriment.

130.   Because of Defendant's breach of warranty, Plaintiffs and the Class suffered damages, including but not limited to any damage to underlying structures or adjoining property caused by the deterioration or failure of the Siding, and any other compensatory or consequential damages.  Plaintiffs and the Class reserve their right to seek all damages available by statute or law.

131.   WHEREFORE, Plaintiffs and the Class demand judgment against Defendant for an amount to be determined at trial and pray for judgment as set forth below.

## SECOND CAUSE OF ACTION
### Breach of Implied Warranties of Merchantability
### and Fitness for a Particular Purpose
Brought By Plaintiff Picht
on behalf of a Minnesota subclass

132.   Plaintiffs incorporate by reference each of the allegations contained in the preceding paragraphs.

133.   Defendant manufactured and sold the Siding into the stream of commerce. Before the Siding was sold and affixed to structures owned by Plaintiffs and the Class, Defendant knew or had reason to foresee that it would be installed on those structures as

a building material.  As a result, a warranty is implied that the Siding is fit for use as exterior siding on such structures and that the Siding is of merchantable quality and fit for its intended use.

134.   Defendant breached implied warranties of fitness and merchantability. When put to its normal intended use, the Siding deteriorated, failed to protect the underlying structure, failed to maintain its color or finish, and did not maintain its original shape or form.

135.   Defendant breached the implied warranty of fitness for a particular purpose. Defendant represented in writing, to Plaintiffs and the Class, that the Siding was fit for use in cold, humid, and hot climates.  As a result, Defendant knew or should have known that the Siding would be subjected to repeated freeze-thaw cycles, wet conditions, and/or freezing temperatures every year.  But when actually subjected to such conditions, the Siding deteriorates and cannot adequately protect the structure.

136.   After determining that they had suffered damages from the failure of the Siding, Plaintiffs gave Defendant notice of the breaches of warranty, and Defendant had actual notice of these breaches.

137.   Defendant's purported "limited warranty" fails of its essential purpose because it purportedly warrants that the Siding will perform as promised for at least 50 years, when in fact, the Siding does not last for this period.

138.   Defendant's purported "limited warranty" also fails of its essential purpose in that it limits recovery to piecemeal replacement of individual boards of the Siding, as well as excluding the cost of labor.  Such limitations are inadequate to redress failure of

the Siding or any resulting damage to the underlying structure.  As a result, the "limited warranty" does not provide a minimum adequate remedy.

139.   The limitations and exclusions in Defendant's warranties are unconscionable and unenforceable.

140.   Because of Defendant's breach of warranty, Plaintiffs and the Class suffered damages, including but not limited to any damage to underlying structures or adjoining property caused by the deterioration or failure of the Siding, and any other compensatory or consequential damages.  Plaintiffs and the Class reserve their right to seek all damages available by statute or law.

141.   WHEREFORE, Plaintiffs and the Class demand judgment against Defendant for an amount to be determined at trial and pray for judgment as set forth below.

### THIRD CAUSE OF ACTION
**Negligence**
Brought By Plaintiff Picht
on behalf of a Minnesota subclass

142.   Plaintiffs incorporate by reference each of the allegations contained in the preceding paragraphs.

143.   Defendant had a duty to Plaintiffs and the Class to exercise reasonable and ordinary care in the testing, design, production, manufacture, warranting, and marketing of the Siding.

144.   Defendant breached this duty by testing, designing, producing, manufacturing, warranting, and marketing the defective Siding, and also by failing to

promptly withdraw defective Siding from the marketplace or take other appropriate remedial action.

145.   Defendant knew or should have known that the Siding was defective, that it would fail prematurely, that it was not suitable for use as an exterior siding product, and that it otherwise did not conform to its warranties and representations.

146.   Because of Defendant's negligence, Plaintiffs and the Class suffered damages, including but not limited to any damage to underlying structures or adjoining property caused by the deterioration or failure of the Siding, and any other compensatory or consequential damages.  Plaintiffs and the Class reserve their right to seek all damages available by statute or law.

147.   WHEREFORE, Plaintiffs and the Class demand judgment against Defendant for an amount to be determined at trial and pray for judgment as set forth below.

**FOURTH CAUSE OF ACTION**
**Declaratory and Injunctive Relief**
Brought By All Plaintiffs
on behalf of a nationwide class or state subclass(es)

148.   Plaintiffs incorporate by reference each of the allegations contained in the preceding paragraphs.

149.   Plaintiffs and the Class seek injunctive and declaratory relief as to the following:

      a.      Whether the Siding is inherently defective.

b.      Whether Defendant knew or had reason to know that the Siding was defective.

c.      Whether limitations in Defendant's purported "limited warranty" are unconscionable or unenforceable.

d.      Whether Defendant has made deceptive or false representations regarding the characteristics or benefits of the Siding.

e.      Whether Defendant has made deceptive or false representations regarding the grade or quality of the Siding, or whether it meets a particular standard.

f.      Whether Defendant has handled previous warranty claims in a manner consistent with the terms of its warranties, and if not, what procedures are necessary to audit or reexamine previous warranty claims.

g.      Whether procedures are needed to preserve the rights of Class members who face prospective failure of the Siding.

### FIFTH CAUSE OF ACTION
**Cal. Business & Professions Code § 17200 Unfair Business Practices**
Brought By All Plaintiffs
on behalf of a nationwide class or state subclass(es)

150.    Plaintiff hereby incorporates by reference the allegations contained in the preceding paragraphs.

151.    Defendant's conduct in manufacturing, designing, engineering, fabricating, assembling, constructing, testing, examining, distributing, marketing, warranting, and/or

administering the warranty for the Siding as described in this Consolidated Complaint took place in the State of California and was an unfair, unlawful, or fraudulent business practice in violation of California Business and Professions Code § 17200.

152. Defendant's concealment, intentional and negligent misrepresentation, and breach of express and implied warranties constitute unfair, unlawful, and fraudulent business acts and practices in violation of § 17200.

153. California Business and Professions Code § 17200 applies to all claims of all the Class members because the conduct which constitutes violations of the code by Defendant occurred within the State of California.

154. Plaintiffs and the Class have been injured and have suffered loss of money or property as a result of Defendant's unfair, unlawful, and/or fraudulent business acts and practices.

155. As a direct or proximate result of Defendant's unfair, unlawful or fraudulent business practices involving the Siding, Defendant engaged in unjust enrichment and Plaintiffs are entitled to restitution of the purchase price. Plaintiffs also have and will continue to suffer damages that include not only the full cost to replace the Siding, but also include, without limitation, consequential and incidental damages.

156.   WHEREFORE, Plaintiffs and the Class demand judgment against Defendant for an amount to be determined at trial and pray for judgment as set forth below.

### SIXTH CAUSE OF ACTION
**Cal. Consumers Legal Remedies Act, Civ. Code §§ 1750, *et seq.***
Brought By Plaintiffs Dillingham and Swiencki
on behalf of a nationwide class or California subclass(es)

157.   Plaintiffs hereby incorporate by reference the allegations contained in the preceding paragraphs.

158.   The conduct described in this Consolidated Complaint took place within the State of California and constitutes unfair methods of competition or unfair and deceptive acts or practices in violation of the Consumers Legal Remedies Act ("CLRA"), Civil Code § 1750, *et seq.*

159.   Venue is proper in that Plaintiffs Dillingham and Swiencki brought action in the federal district courts that contain the county in which Defendant is doing business or where its deceptive transactions or any substantial portion thereof occurred.  Pursuant to Civil Code § 1780(d), an affidavit of proper venue is attached to this amended consolidated complaint.

160.   The CLRA applies to all claims of the Class members because the conduct that constitutes violations of the CLRA by Defendant occurred within the State of California.

161.   Plaintiffs and members of the Class are "consumers" as defined by Civil Code § 1761(d).

162.    James Hardie is a "person" as defined by Civil Code § 1761(c).

163.    The Siding qualifies as "goods" as defined by Civil Code § 1761(a).

164.    Plaintiffs and Class members' purchases of the Siding and/or homes or structures on which the Siding is installed are "transactions" as defined by Civil Code § 1761(e)

165.    The CLRA deems the following methods of competition unfair or deceptive acts or practices undertaken by a person in a transaction intended to result or which results in the sale of goods to any consumer as unlawful:

   a.    "Representing that goods … have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities which they do not have." § 1770(a)(5).

   b.    "Representing that goods … are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another." § 1770(a)(7).

166.    Defendant engaged in unfair competition or unfair or deceptive acts or practices in violation of Civil Code §§ 1770(a)(5) and (a)(7) when it represented, through its advertising and other express representations, that the Siding had benefits or characteristics that it did not actually have.

167.    Defendant further violated the CLRA when it falsely represented that the Siding was of a certain standard or quality.

168.    Finally, Defendant violated the CLRA when it advertised the Siding with the intent not to sell it as advertised.

169.    Defendant's deceptive practices were specifically designed to induce Plaintiffs and members of the Class to purchase their products.

170.   Defendant engaged in marketing efforts to reach Class members, their agents, or third parties upon whom they relied, to persuade them to purchase and install the Siding manufactured by Defendant, or to purchase homes or other structures on which the defective Siding had been installed.

171.   By a letter on July 31, 2012, a demand was made upon Defendant by Plaintiff Swiencki to redress its deceptive practices in violation of the CLRA.  As of the filing of this complaint, Defendant has not responded to this demand.

172.   By a letter on August 8, 2013, a demand was made upon Defendant by Plaintiff Dillingham to redress its deceptive practices in violation of the CLRA. Defendant has thirty days to respond to this demand, and if Defendant fails to respond in that time, these Plaintiffs may pursue damages under the CLRA.

173.   To this day, Defendant continues to engage in unlawful practices in violation of the CLRA. Defendant continues to conceal the defective nature of the Siding.

174.   Plaintiffs Dillingham and Swiencki, on behalf of themselves and all others similarly situated, demand that a permanent injunction be issued against Defendant to refrain from advertising and representations that omit material facts about the defective Siding; compelling Defendant to replace and repair all defective Siding pursuant to Civil Code § 1780(d); or providing for substantially similar relief under the Consumer Fraud and Deceptive Trade Practices Acts of other states.

175.   WHEREFORE, Plaintiffs Dillingham and Swiencki demand judgment against Defendant for injunctive relief to be determined at trial; and Plaintiff Swiencki

further demands judgment against Defendant for an amount to be determined at trial and prays for judgment as set forth below.

### SEVENTH CAUSE OF ACTION
**Unlawful Trade Practices—Minnesota Statute § 325D.13**
Brought by Plaintiffs Picht and Bowers
on behalf of a Minnesota subclass

176.   Plaintiffs incorporate by reference the allegations contained in the foregoing paragraphs of this Complaint.

177.   Defendant is a manufacturer, marketer, seller, and distributor of Siding.

178.   Plaintiffs are protected by § 325D.13 because they purchased James Hardie Siding for their homes in Minnesota.

179.   Section 325D.13 provides that, "no person shall, in connection with the sale of merchandise, knowingly misrepresent, directly or indirectly, the true quality, ingredients or origin of such merchandise."

180.   By engaging in the conduct described herein, James Hardie violated and continues to violate Minn. Stat. § 325D.13 and the similar laws of other states.

181.   Minnesota Statute § 325D.44, subd. 1, provides in part:

a person engages in a deceptive trade practice when, in the course of business, vocation, or occupation, the person:

\* \* \*

(5) represents that goods or services have…characteristics, ingredients, uses, benefits, … that they do not have …

(7) represents that goods or services are of a particular standard, quality, or grade, … if they are of another …

(13) engages in any other conduct which similarly creates a likelihood of confusion or of misunderstanding.

Consumer protection laws of other states make similar conduct unlawful.

182.   Plaintiffs' claim inures to the public benefit, and so under Minnesota's private-attorney general statute, Minn. Stat. § 8.31, subdiv. 3a, Plaintiffs are authorized to bring action under § 325D.13 to recover damages, costs, and disbursements, including reasonable attorney's fees.

183.   Defendant used and employed unfair methods of competition and/or unfair or deceptive acts or practices including, but not limited to the following:

    a.   Representing that goods have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have or that person has sponsorship, approval, status, affiliation or connection that he does not have;

    b.   Representing that goods or services are of a particular standard, quality, or grade or that goods are of a particular style or model, if they are of another;

    c.   Engaging in other fraudulent or deceptive conduct which created the likelihood of confusion or of misunderstanding; and

    d.   Utilizing misrepresentations, knowing omissions, and other sharp business practices to mislead or create a misleading impression regarding the integrity, durability, longevity, and warranty of its Siding.

184.    Defendant knew or should have known that its Siding was defective, would fail prematurely, was not suitable for use as an exterior Siding product, and otherwise was not as warranted and represented by Defendant.

185.    Defendant's misrepresentations, concealment, omissions, and other deceptive conduct were likely to deceive and cause misunderstanding and is associated with Plaintiffs being deceived about the suitability of James Hardie's Siding for use as a long-lasting exterior building product that would be backed by warranties of up to 50 years, indicating the expected useful life of the Siding.

186.    Defendant intended that Plaintiffs and Plaintiffs' representatives and contractors would rely on Defendant's misrepresentations, concealment, warranties, deceptions, and/or omissions regarding the suitability, durability, and useful life of its defective Siding.

187.    James Hardie's conduct and omissions described herein repeatedly occurred in James Hardie's trade or business and were capable of deceiving a substantial portion of the consuming public.

188.    The facts concealed or not disclosed by James Hardie are material facts in that Plaintiff and any reasonable consumer would have considered in deciding whether to purchase the Siding or purchase a structure constructed with the Siding. Had Plaintiffs known the Siding was defective and would fail prematurely they would not have purchased the Siding or would have either negotiated additional warranty coverage, negotiated a lower price to reflect the risk, or simply avoided the risk altogether by purchasing different siding.

189.   Defendant intended that Plaintiffs would rely on the deception by purchasing its siding, unaware of the undisclosed material facts. This conduct constitutes consumer fraud.

190.   James Hardie's unlawful conduct is continuing, with no indication that James Hardie will cease.

191.   Plaintiffs have suffered actual, ascertainable losses and damages by virtue of having purchased defective Siding.

192.   WHEREFORE, Plaintiffs and the Class demand judgment against Defendant for an amount to be determined at trial and pray for judgment as set forth below.

### EIGHTH CAUSE OF ACTION
**False Advertising—Minnesota Statute § 325F.67**
Brought by Plaintiffs Picht and Bowers
on behalf of a Minnesota subclass

193.   Plaintiffs incorporate by reference each of the allegations contained in the preceding paragraphs of this Complaint.

194.   Minnesota's False Statement in Advertising Act ("FSAA"), Minn. Stat. § 325F.67, provides a cause of action to "any person, firm, corporation, or association" who purchases goods or services through advertising which "contains any material assertion, representation, or statement of fact which is untrue, deceptive, or misleading." Consumer protection laws of other states make similar conduct unlawful.

195.   Plaintiffs' claim inures to the public benefit, and so under Minnesota's private-attorney general statute, Minn. Stat. § 8.31, subdiv. 3a, Plaintiffs are authorized to

bring action under § 325F.67 to recover damages, costs, and disbursements, including reasonable attorney's fees.

196. By engaging in the conduct herein, James Hardie violated and continues to violate Minn. Stat. § 325F.67 and the similar laws of other states.

197. James Hardie's misrepresentations, knowing omissions, and use of other sharp business practices include, by way of example:

> a. James Hardie's fraudulent, misleading, and deceptive statements relating to the true characteristics, standards, quality, and grade of the Siding;
>
> b. James Hardie's fraud and misrepresentations by omission, of information about the defective nature of the Siding, the improper design of the Siding, and James Hardie's knowledge of those defects; and
>
> c. James Hardie's concealment of the true nature of its defective Siding.

198. James Hardie and its agents and distributors also made untrue, deceptive, and misleading assertions and representations about the Siding by making and repeating the various statements about the alleged quality of the Siding referenced herein.

199. As a result of James Hardie's conduct, Plaintiffs have suffered actual damages in that they have purchased and installed the Siding on their structures. There is an association between James Hardie's acts and omissions as alleged herein and the damages suffered by Plaintiffs.

200.   As a result of James Hardie's untrue, deceptive, and misleading assertions and representations about the Siding, Plaintiffs have and will continue to suffer damages that include not only the full cost to replace the Siding, but also include, without limitation, consequential and incidental damages.

201.   WHEREFORE, Plaintiffs and the Class demand judgment against Defendant for an amount to be determined at trial and pray for judgment as set forth below.

### NINTH CAUSE OF ACTION
**Violation of Ohio Consumer Sales Practices Act**
Brought by Plaintiff Bethel

202.   Plaintiff incorporates by reference each of the allegations contained in the preceding paragraphs.

203.   Defendant's conduct violates the Ohio Consumer Sales Practices Act, Ohio Rev. Code § 1345.01 et seq., and materially similar consumer protection statutes of other states.

204.   For the purposes of this count, Defendant is a supplier of the Siding.

205.   Consistent with Defendant's representations as to the transferability of its 50-year warranty, Defendant assigned or transferred the services and benefits arising under its warranty to Plaintiff upon his acquisition of the Siding.

206.   Because the Siding is installed on his personal residence, Plaintiff acquired the Siding primarily for personal, family, or household purposes.

207.   Defendant committed unfair or deceptive acts and practices through misrepresentations about the durability and reliability of the Siding, its suitability and

effectiveness in cold climates, its need for maintenance, and its anticipated useful life, among other representations.  These representations were deceptive in that:

    a.    Defendant represented that the Siding had uses, benefits, or performance characteristics that it does not have.

    b.    Defendant represented that the Siding was of a particular quality or grade when it was not, or that it met a particular standard when it did not.

208.   Defendant committed unfair or deceptive acts and practices through misrepresentations about the operation of its warranties.  These include, but are not limited to, representations discounting the effect or operation of express warranties in its advertising and marketing literature; representations regarding the institution or effect of purported "limited warranties"; and representations that obfuscated the duration of the warranty and the scope of warranty coverage.

209.   Defendant engaged in unconscionable acts and practices by continuing to market the Siding after it knew or had reason to know the Siding was defective.  Because the Siding was not suitable for its ordinary use, Defendant had reason to know that:

    a.    The Siding was priced substantially in excess of the price for similar products.

    b.    Plaintiff would not substantially benefit from the Siding.

    c.    Defendant knowingly made misleading statements of opinion, upon which Plaintiff and Class members were likely to rely to their detriment.

210.    Because of Defendant's violations of the Ohio Consumer Sales Protection Act, Plaintiff suffered damages, including but not limited to any damage to underlying structures or adjoining property caused by the deterioration or failure of the Siding, and any other compensatory or consequential damages.  Plaintiff Bethel reserves his right to seek all damages, and any available injunctive or declaratory relief, available by statute or law.

211.    WHEREFORE, Plaintiff Bethel demands judgment against Defendant for an amount to be determined at trial and prays for judgment as set forth below.

### TENTH CAUSE OF ACTION
**Violation of the Virginia Consumer Protection Act,**
**Va. Code Ann. § 59.1-200(A)(5)**
Brought by Plaintiff Kavianpour
on behalf of a Virginia subclass

212.    Plaintiff incorporates by reference each of the allegations contained in the preceding paragraphs of this Complaint.

213.    The Virginia Consumer Protection Act, Va. Code. §59.1-200(A)(5), prohibits "[m]isrepresenting that goods or services have certain quantities, characteristics, ingredients, uses, or benefits."

214.    Defendant made the misrepresentation that its Siding had the qualities and characteristics listed in this Complaint, would last 50 years, that they were of superior quality, that they were durable and that they were able to withstand a number of conditions.

215.    Defendant also misrepresented that its Siding could be used for normal purposes without prematurely failing.

216.    Defendant also made misrepresentations, by omission, of information about the defective nature of its Siding, the improper manufacture of the products and Defendant's knowledge of those defects.

217.    Plaintiff and the Class relied upon Defendant's misrepresentations and purchased Defendant's Siding.

218.    Plaintiff and putative class have suffered actual damages, caused by Defendant's misrepresentations, in that they have purchased and installed in homes and structures Siding that is defective, not suitable for its intended use and not in compliance with building regulations.  As such, a causal nexus exists between Defendant's actions and the damages suffered by the Plaintiff and the Class.

219.    Plaintiff and the putative class will suffer damages that include not only the full cost to replace their Siding, but also include, without limitation, property damage, consequential and incidental damages.

220.    As a direct, proximate and foreseeable result of Defendant's violation of the Virginia Consumer Protection Act, Plaintiff and putative class members sustained damages.

221.    WHEREFORE, Plaintiffs and the Class demand judgment against Defendant for an amount to be determined at trial and pray for judgment as set forth below.

**ELEVENTH CAUSE OF ACTION**
**Violation of the Virginia Consumer Protection Act,**
**Va. Code Ann. § 59.1-200(A)(6)**
Brought by Plaintiff Kavianpour
on behalf of a Virginia subclass

222.   Plaintiff incorporates by reference each of the allegations contained in the preceding paragraphs of this Complaint.

223.   The Virginia Consumer Protection Act, Va. Code. §59.1-200(A)(6), prohibits "[m]isrepresenting that goods or services are of a particular standard, quality, grade, style, or model."

224.   Defendant misrepresented that its Siding met building standards.

225.   Defendant also misrepresented that its Siding was of superior quality, and that they could last 50 years and withstand harsh conditions.

226.   Defendant also misrepresented that its Siding was of a quality that would permit them to be used for normal purposes without prematurely failing.

227.   Defendant also made misrepresentations, by omission, of information about the defective nature of Siding, the improper manufacture of the Siding, and Defendant's knowledge of those defects.

228.   Plaintiff and the Class relied upon Defendant's misrepresentations and purchased Defendant's Siding.

229.   Plaintiff and putative class members have suffered actual damages caused by Defendant's misrepresentations, in that they have purchased and installed in homes and structures Siding that is defective, not suitable for their intended use, and not in

compliance with common building standards.   There is a causal nexus between Defendant's actions and the damages suffered by the Plaintiff and the Class.

230.   Plaintiff and putative class will suffer damages that include not only the full cost to replace their Siding, but also include, without limitation, property damage, consequential and incidental damages.

231.   As a direct, proximate and foreseeable result of Defendant's violation of the Virginia Consumer Protection Act, Plaintiff and putative class members sustained damages.

232.   WHEREFORE Plaintiffs and the Class demand judgment against Defendant for an amount to be determined at trial and pray for judgment as set forth below.

### TWELFTH CAUSE OF ACTION
**Violation of the Florida Deceptive and Unfair Trade Practices Act**
Brought by Plaintiff Buchanan Trust
on behalf of a Florida subclass

233.   Plaintiff incorporates by reference each of the allegations contained in the preceding paragraphs of this Complaint.

234.   Section 501.203(7), Florida Statutes defines "consumer" as "an individual; child, by and through its parent or legal guardian; firm; association; joint venture; partnership; estate; trust; business trust; syndicate; fiduciary; corporation; or any other group or combination." Plaintiff and Class Members are "Consumers" within the meaning of § 501.203(7), Florida Statutes.

235. Section 501.203(8), Florida Statutes defines "trade or commerce" as "the advertising, soliciting, providing, offering, or distributing, whether by sale, rental, or otherwise, of any good or service, or any property, whether tangible or intangible, or any other article, commodity, or thing of value, wherever situated." And "trade or commerce shall include the conduct of any trade or commerce, however denominated, including any nonprofit or not-for-profit person or activity."

236. The advertising, soliciting, providing, offering, or distribution of Siding by Defendant to Plaintiff and Class Members is "trade or commerce" within the meaning of section 501.203(8), Florida Statutes.

237. Section 501.204(1) provides that "unfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce are hereby declared unlawful."

238. The Defendant's acts and omissions as well as their failure to use reasonable care in this matter as alleged in this Complaint equals unconscionable acts or practices, as well as deceptive and unfair acts or practices in the conduct of Defendant's trade or commerce pursuant to section 501.204, Florida Statutes.

239. The unconscionable, illegal, unfair and deceptive acts and practices of Defendant violate the provisions of Florida's Deceptive and Unfair Trade Practices Act. Plaintiff and Class Members have suffered actual damage for which they are entitled to relief pursuant to section 501.211(2), Florida Statutes.

240.   Plaintiff and Class Members are entitled to recover their reasonable attorneys' fees pursuant to section 501.2105, Florida Statutes upon prevailing in this matter.

241.   As a direct and proximate result of Defendant's acts and omissions, Plaintiff and Class Members have suffered or will suffer damages, which include, without limitation, cost to inspect, repair, and/or replace their Siding and other property, all of which constitute cognizable damages under the Florida Deceptive and Unfair Trade Practices Act 501.201, *et seq*.

242.   WHEREFORE, Plaintiffs and the Class demand judgment against Defendant for an amount to be determined at trial and pray for judgment as set forth below.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, individually and on behalf of the Class, prays for relief against Defendant as follows:

1.   Money damages in an amount in excess of $5,000,000.00.

2.   All damages and relief authorized by statute or law, including but not limited to special or punitive damages, attorney fees, costs, and disbursements.

3.   Class certification pursuant to Fed. R. Civ. P. 23.

4.   Injunction against further conduct in violation of applicable consumer protection statutes.

5.      Injunction against further conduct that breaches applicable warranties or that prevents Plaintiff and Class members from obtaining complete relief from the failure of the Siding.

6.      Declaration of the parties' rights and obligations.

7.      Any other relief as the Court deems just and equitable.

## **DEMAND FOR JURY TRIAL**

Plaintiffs demand a trial by jury as to all claims so triable.


Dated:  August 9, 2013                              LOCKRIDGE GRINDAL NAUEN P.L.L.P.

                                                    s/   Robert K. Shelquist
                                                    Robert K. Shelquist, #21310X
                                                    Karen H. Riebel, #219770
                                                    Scott A. Moriarity, #0321977
                                                    100 Washington Avenue South,
                                                    Suite 2200
                                                    Minneapolis, MN  55401
                                                    (612) 339-6900
                                                    rkshelquist@locklaw.com
                                                    khriebel@locklaw.com
                                                    samoriarity@locklaw.com


Charles J. LaDuca                    Charles E. Schaffer
Vicki Romanenko                      Brian F. Fox
CUNEO GILBERT & LADUCA, LLP          LEVIN, FISHBEIN, SADRAN & BERMAN
106-A South Columbus Street          510 Walnut Street, Suite 500
Alexandria, VA  22314                Philadelphia, PA 19106
(202) 789-3960                       (215) 592-1500
charlesl@cuneolaw.com                cschaffer@lfsblaw.com
vicky@cuneolaw.com                   bfox@lfsblaw.com

Clayton D. Halunen
HALUNEN & ASSOCIATES
1650 IDS Center
80 South Eighth Street
Minneapolis, MN  55402
(612) 604-4098
halunen@halunenlaw.com

Michael McShane
Mariana Cole
AUDET & PARTNERS, LLP
221 Main Street, Suite 1460
San Francisco, CA  94105
(415) 982-1776
mmcshane@audetlaw.com
mcole@audet.com

Nicholas J. Drakulich
THE DRAKULICH FIRM
2727 Camino Del Rio South, Suite 322
San Diego, CA  92108
(858) 755-5887
njd@draklaw.com

Shannon J. Carson
Robin Switzenbaum
Lawrence Deutsch
BERGER & MONTAGUE, P.C.
1622 Locust Street
Philadelphia, PA  19103
Tel:  (215) 875-4656
scarson@bm.net
rswitzenbaum@bm.net
ldeutsch@bm.net

Shawn J. Wanta
Frances Baillon
BAILLON THOME JOZWIAK
MILLER & WANTA, LLP
222 South Ninth Street, Suite 2955
Minneapolis, MN  55402
Tel:  (612) 252-3570
sjwanta@baillonthome.com
fbaillon@baillonthome.com

Eric Holland
HOLLAND, GROVES, SCHNELLER &
STOLZE, LLC
300 North Tucker, Suite 801
St. Louis, MO  63101
Tel:  (314) 241-8111
eholland@allfela.com

D. Michael Campbell
CAMPBELL LAW
1861 N. Crystal Lake Drive
Lakeland, FL  33801
dmcampbell@campbelllaw.com

**ATTORNEYS FOR PLAINTIFFS**